UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ALANA LEMMEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    No. 2:19 CV 84 |
| | ) |
| STATE FARM MUTUAL | ) |
| AUTOMOBILE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
|     Defendant. | ) |

## OPINION and ORDER

Before the court is the motion of defendant State Farm Mutual Automobile Insurance Company for partial summary judgment. (DE # 14.) In this motion, defendant seeks summary judgment on the claim of plaintiff Alana Lemmen that defendant acted in bad faith with respect to the payment of benefits under plaintiff's automobile insurance policy. For the reasons set forth below, the motion is granted.

**I.    BACKGROUND**

In November 2017, plaintiff's vehicle was rear-ended by a third party's vehicle. Plaintiff suffered: (1) post-concussion syndrome; (2) cervical disc disorder with C5-C6 internal disc disruption and calcification of her anterior longitudinal ligament; (3) displacement of her C5-C6 intervertebral disc without myelopathy; and (4) cervical radiculopathy. (DE # 18-3 at 3.) Plaintiff's treating physician indicated that, at least as of August of 2018, he could not state definitively whether plaintiff had permanent injuries or needed surgery until further workup and studies were completed. (*Id.* at 3-4.)

Plaintiff's medical bills added up to nearly $17,000. (DE # 18-4.) Plaintiff recovered $25,000, the full liability coverage limit, from the third party's insurer. Plaintiff sought additional money from her own insurer, the defendant in this case, under the underinsured motorist coverage provision in her policy, the limits of which were also $25,000.

Defendant offered $5,000 in underinsured motorist benefits. Plaintiff, through her attorney, rejected the offer, and demanded the full $25,000 available under the underinsured motorist provision of the policy. Plaintiff claims she "reasonably demanded the remaining $25,000.00 . . . multiple times from Defendant State Farm." (DE # 18 at 3.) Plaintiff further states she "made it clear that $5,000.00 was unacceptable and that [she] was owed much more than her . . . policy limit." (*Id.*) According to plaintiff, "[d]ue to the serious and permanent injuries [she] sustained, she is undoubtedly owed more than her policy's $25,000.00 underinsured motorist coverage limit she purchased from Defendant State Farm." (*Id.* at 6.) According to plaintiff, "State Farm failed to provide any explanation why it believed [she] was only owed $5,000.00 under her policy." (*Id.*)

Defendant submitted some of its internal records connected to plaintiff's case. The records indicate that defendant's representative made the following notation on November 14, 2018: "Called [plaintiff's attorney] and extended UIM offer ofr [sic] $5000. He said she will not accept it as this is a PL case of $25,000. He argued that she suffered a herniated disc as a result of this accident and that she may have a brain injury

2

and need more tests and continual treatment. Explained the medical records did not state she had a brain injury . . . she did have a concussion . . . but no indication that she will have to have more tests of what can come later. Explained there was no hemorraging found from the tests. Also explained she has a long history of back issues including 7 years of back pain, schlerosis, and degenerative issues. Explained her specials were approx $20,000, SF waived the MPC subro, and she got the $25,000 for the at fault carrier. Explained do not find that this accident was the sole cause of her injuries. The attorney got upset and said if SF does not offer the PL he will file suit and go to a jury and find a bad faith claim. Explained the atty that this is not a bad faith claim and that if her doctor will put in writing that she will need back surgery and send to us and we will review. Attorney said will not do that and will just file suit. Asked to send offer in writing and said good bye." (DE # 19-1 at 1.)

Plaintiff asserts that defendant proceeded to send her an unsolicited settlement check for $5,000 on November 30, 2018, "in likely an attempt to tempt [her] into accepting much less than she was owed under her policy." (DE # 18 at 4.) Rather than accept the settlement, plaintiff filed suit against defendant, alleging breach of contract and breach of duty to act in good faith (also known as a "bad faith" claim) on December 3, 2018. (DE # 4.)

The parties' attorneys continued to negotiate. On February 5, 2019, counsel from both sides discussed the bad faith claim. Plaintiff's attorney claims that during that discussion, defendant's counsel told him that defendant would not participate in settlement negotiations until plaintiff dropped her bad faith claim and that defendant

3

would be focused on getting the bad faith claim dismissed before further attempting to settle. (DE # 18 at 4.) In an email correspondence dated February 6, 2019, counsel for defendant summarized his take on the discussion with plaintiff's counsel that took place the day before: "I requested that your client consider dismissing the bad faith component of her complaint . . . without prejudice. If we could so stipulate this would allow the Plaintiff to reinstate her bad faith allegations, should she desire, at any time during the pendency of this case. . . My review of the claim file leads me to believe there is a dispute between the Plaintiff and State Farm as to the value of Ms. Lemmen's underinsured motorist claim. But nothing more. If there is something that I'm missing that you believe would support a claim of bad faith please disclose what that is." (DE # 19-3 at 2.) Plaintiff's counsel responded via email: "Liability is crystal clear in this case and the damages are similarly clear. Mrs. Lemmen is owed much more than the available $25,000 under her policy. . . . We attempted to resolve this case informally with State Farm numerous times before filing suit. In response, State Farm gave Mrs. Lemmen an unfounded $5,000 take it or file suit top offer. . . . Mrs. Lemmen will not amend her Complaint." (DE # 19-3 at 1-2.)[1]

---

[1] Plaintiff's attorney's account of the conversation with defense counsel is contained in the brief filed in response to defendant's motion for partial summary judgment, not in a format that the court would typically require for evidence, such as a sworn affidavit or deposition testimony. Defendant also objects, more generally, to the court's consideration of any events occurring after plaintiff filed the bad faith claim (including the aforementioned conversation), as these events necessarily could not be relevant to the merits of a bad faith claim that had already been filed. However, to afford plaintiff the full benefit of the doubt, the court will consider post-complaint facts and the non-evidentiary statement of plaintiff's counsel for the limited purpose of this opinion, as ultimately defendant is entitled to summary judgment on the bad faith claim with or without consideration of these facts.

Defendant now seeks partial summary judgment on plaintiff's bad faith claim, only. (DE # 14.) The motion is fully briefed and ripe for ruling.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows for the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict

5

for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 518 (Ind. 1993). Negligence, breach of contract, or even poor judgment on the part of an insurance company is insufficient to establish the independent tort of bad faith. *Id.* at 519-20. Instead, "the element of conscious wrongdoing must also be present." *Allstate Ins. Co. v. Fields,* 885 N.E.2d 728, 732 (Ind. Ct. App. 2008). Wrongdoing sufficient to sustain a bad faith claim can be demonstrated with "evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Id.*

Defendant has met its initial burden on its motion for summary judgment by pointing out a lack of evidence in support of plaintiff's claim of bad faith. *Celotex,* 477 U.S. at 325. In response, plaintiff makes essentially two arguments regarding the existence of a genuine issue of material fact in connection with her bad faith claim: (1) defense counsel urged plaintiff to drop the bad faith claim and indicated a lack of interest in negotiating until the bad faith claim was eliminated; and (2) the plaintiff's injuries speak for themselves and demonstrate that defendant acted in bad faith in offering a mere $5,000.

Even if one overlooks the awkwardness of basing a bad faith claim on an insurer's actions *after* the bad faith claim is filed, no reasonable fact-finder could infer bad faith from defendant's purported emphasis on elimination of a claim of bad faith during the course of negotiations with opposing counsel. Such is the nature of litigation and settlement negotiations. As a fellow district court stated, "Each adverse party has the right to stand firm and advance its interests during the negotiations." *Whiles v. Allstate Ins. Co.,* No. CIV. 3:04CV134AS, 2005 WL 2204866, at *4 (N.D. Ind. Sept. 9, 2005). It does not amount to bad faith to jockey for a strategic advantage in litigation or to attempt to eliminate a potentially high-cost claim like one alleging bad faith (which carries the potential of punitive damages). In order for there to be sufficient evidence from which a fact-finder could find in plaintiff's favor, there would need to be *something else* from which a dishonest state of mind could be inferred; garden-variety litigation maneuvers will not suffice.

But rather than offer some other evidence demonstrating dishonest intent on defendant's part, plaintiff repeatedly rests on the notion that her injuries speak for themselves. Plaintiff claims that "her damages clearly exceed her policy limits" and "she is undoubtedly owed more than her policy's $25,000.00 underinsured motorist coverage limit." (DE # 18 at 6.) However, the amount of plaintiff's damages is not "clear" to the court, and no reasonable fact-finder could make a reasonable inference regarding the amount of damages, either. Plaintiff, at this point, has already been compensated beyond her actual medical expenses, and the internal records submitted

by defendant (unchallenged by plaintiff) indicate that defendant offered to reconsider its settlement offer upon receipt of further documentation from plaintiff's treating physician regarding further surgery and treatment. Plaintiff provided no such further documentation to defendant, nor to the court. Her damages are far from "clear." They are certainly not "clear" enough to permit a fact-finder to reasonably infer that defendant acted in bad faith by offering her $5,000.

The crux of plaintiff's arguments is really disdain for defendant's settlement strategy. As a fellow Indiana district court articulated: "It takes more than a dislike of the settlement tactics of this insurance company to make a [bad faith] claim against it under the law of Indiana." *Whiles v. Allstate Ins. Co.,* No. CIV. 3:04CV134AS, 2005 WL 2204866, at *4 (N.D. Ind. Sept. 9, 2005). And plaintiff's insistence that she is simply in the right falls short. Plaintiff presumably felt justified in refusing to accept defendant's terms, yet she "offers no explanation as to why her refusal to settle on [her opponent's] terms is less culpable than [her opponent's] refusal to settle on her terms." *State v. Carter,* 658 N.E.2d 618, 623 (Ind. Ct. App. 1995).

"The Indiana Supreme Court has recognized the right of insurance companies to dispute the amount of a claim." *Whiles,* 2005 WL 2204866, at *4. Defendant did so here. Without more from which a culpable state of mind may be inferred, the court cannot conclude that a reasonable fact-finder could resolve a bad faith claim in plaintiff's favor. Therefore, partial summary judgment is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion for partial summary judgment on plaintiff's bad faith claim. (DE # 14.) The court makes no comment on the merits of plaintiff's claim for breach of contract; this claim remains pending.

**SO ORDERED.**

Date: March 29, 2021

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT